42 F.3d 1402
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Noe Barajas BALTAZAR, Defendant-Appellant.
 No. 93-50695.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 4, 1994.
Decided Dec. 7, 1994.
 
 1
 Before: FLETCHER and FERNANDEZ, Circuit Judges, and SEDWICK,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Noe Barajas Baltazar appeals his jury conviction and sentence for conspiracy to kidnap and extort money and the transmission in interstate or foreign commerce of threats to injure in violation of 18 U.S.C. Secs. 1201(c), 371, and 875(b). Baltazar contends: (1) that there was insufficient evidence to support his conviction; (2) that the district court erred in applying upward adjustments for use of a dangerous weapon and for holding the victim longer than seven days; and (3) that the district court erred in not granting a downward departure for minor participant status.
 
 
 4
 The district court had jurisdiction under 18 U.S.C. Sec. 3231. This court has jurisdiction under 28 U.S.C. Sec. 1291 and 18 U.S.C. Sec. 3742.
 
 I.
 
 5
 Baltazar contends the evidence was insufficient to convict him of conspiring to kidnap Frank Contreras. The evidence is sufficient to support a conviction if, "reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992) (citations and internal quotations omitted). This court will reverse a conviction under the reasonable doubt standard if a review of the evidence leads to a conclusion that there are not sufficient facts for a factfinder to rationally choose a hypothesis of guilt over a hypotheses of innocence. Id. at 830.
 
 A. Conspiracy to Kidnap
 
 6
 Baltazar argues the government failed to prove defendants conspired to unlawfully seize and kidnap Frank Contreras. Baltazar further argues that there is insufficient evidence to conclude that he was aware of de la Vega's plan to kidnap Frank Contreras and joined it.
 
 
 7
 The victim testified that Baltazar was outside as he was led away from his apartment at gunpoint, forced into a van, and threatened. Once in Mexico, Baltazar helped de la Vega hold the victim hostage, assisted de la Vega in mentally torturing the victim, made telephone calls to the victim's father discussing ransom, and helped transport the victim back into the United States. Based on this evidence a rational juror applying the reasonable doubt standard could find Baltazar guilty as a principal or an aider and abettor of conspiracy to kidnap.
 
 
 8
 Baltazar is also vicariously liable for the crimes of his co-conspirators committed pursuant to and in furtherance of the conspiracy. E.g., United States v. Inafuku, 938 F.2d 972, 974 (9th Cir.1991), cert. denied, 112 S.Ct. 877 (1992). Even if Baltazar had not known of the plan to kidnap the victim before the victim was taken, he became a member of the conspiracy thereafter. Id. Given the victim's testimony and corroborating evidence, a jury would be substantially justified in concluding that Baltazar was guilty of conspiracy to kidnap. See United States v. Lopez-Alvarez, 970 F.2d 583, 593 (9th Cir.), cert. denied, 113 S.Ct. 504 (1992).
 
 B. Transmission of Threats
 
 9
 Count 4 of the indictment charged Baltazar with conspiracy to transmit threats in interstate commerce in violation of 18 U.S.C. Secs. 371 and 875(b). Baltazar argues that there was no proof of a conspiracy to transmit these threats because there was no evidence he was acting with another person.
 
 
 10
 18 U.S.C. Sec. 371 makes it an offense for two or more persons to conspire to commit any offense against the United States if one or more of such persons do any act to effect the object of the conspiracy. 18 U.S.C. Sec. 875(b) makes it an offense to transmit in interstate or foreign commerce any communication containing any threat to kidnap or injure another person.
 
 
 11
 The evidence established that Baltazar made calls to the victim's father. Sometimes he and de la Vega spoke to the victim's father during the same call. Baltazar and the victim's father discussed the victim's captivity and made arrangements for the payment of ransom. Given this evidence, we reject Baltazar's contention that the government failed to prove an agreement to conspire. "The prosecution need not show the agreement to have been explicit. An implicit agreement may be inferred from the facts and circumstances of the case." United States v. Hernandez, 876 F.2d 774, 777 (9th Cir.) (internal quotations omitted), cert. denied, 493 U.S. 863 (1989).
 
 C. Making Threatening Calls
 
 12
 Counts 5 through 8 of the indictment charged Baltazar with making threatening calls to the victim's parents. Baltazar contends that these counts do not contain explicit threats from him and therefore ought to be set aside and replaced with judgements of acquittal.
 
 
 13
 Count 5 charges Baltazar with making a threatening call on October 12, 1992 to the victim's mother. The victim's mother testified that an individual representing himself as "Mr. Kennedy" stated that unless ransom was paid, she would never see her son again. Count 6 charges Baltazar with making a threatening call on October 20, 1992 to the victim's father. In this call de la Vega said, "I cannot release your son until I have the money." Count 7 involves a call on October 22, 1992, in which de la Vega told the victim's father he would rather throw the victim into a ditch than risk the safety of one of his people. Count 8 involves a call on October 23, 1992, in which de la Vega stated that if police were present in San Clemente, there would be a massacre.
 
 
 14
 There should be no question that these statements are threatening and that, coming from Mexico, the calls were transmitted in interstate or foreign commerce. Additionally, a jury could reasonably find that the defendant aided and abetted in making the threatening calls by either speaking during the calls or by holding the victim. Finally, as a convicted member of the conspiracy, the defendant is responsible for crimes committed by other conspiracy members made in furtherance of the conspiracy. Inafuku, 938 F.2d at 974. The convictions on Counts 5 through 8 are affirmed.
 
 II.
 
 15
 Baltazar argues the district court committed clear error when it enhanced his base offense level by two levels on the basis that a dangerous weapon was used in the commission of the offense and by one additional level for holding the victim more than seven days under U.S.S.G. Secs. 2A4.1(b)(3) and (b)(4)(B). We review the district court's factual findings in the sentencing phase for clear error. United States v. Chapnick, 963 F.2d 224, 226 (9th Cir.1992).
 
 
 16
 Baltazar contends that since he was acquitted of the substantive kidnapping offense, 18 U.S.C. 924(c), his conduct must be measured by the guideline applicable to the conspiracy count. Baltazar further argues that factors like the use of a weapon and the length of captivity are irrelevant. The government argues that the use of a weapon and the holding a victim for longer than seven days actually occurred, therefore it is immaterial whether it is specifically intended in the conspiracy.
 
 
 17
 Application Note 2 to U.S.S.G. Sec. 2X1.1, provides with respect to conspiracies:
 
 
 18
 The base offense level will be the same as that for the substantive offense. But the only specific offense characteristics from the guidelines for the substantive offense that apply are those that are determined to have been specifically intended or actually occurred. Speculative specific offense characteristics will not be applied.... If it was established that the defendants actually intended [in a conspiracy] to physically restrain the [bank] teller, the specific offense characteristic for physical restraint would be added. In an attempted theft, the value of the items that the defendant actually attempted to steal would be considered.
 
 
 19
 It is clear that the upward adjustments were appropriate because the specific offense characteristics actually occurred. The district court did not commit clear error in adding two levels for use of a dangerous weapon and adding one level for holding the victim captive for longer than seven days for a total increase of three levels.
 
 III.
 
 20
 Baltazar also contends that he should have received a two point reduction for being a minor participant in the conspiracy under U.S.S.G. Sec. 3B1.2(b). The district court did not address the defendant's request explicitly. It simply did not grant it. If we thought it an oversight that should be addressed first by the district court, we would remand it for its consideration. However, here, it is so clear that the reduction was not warranted that we see no purpose to be served by remand. The defendant did not press the point with the district court--he did not call its omission to the court's attention after the Guidelines computation was announced, and, indeed, does not suggest in his brief to us that the district court did not consider the request. We conclude we should review for clear error what we take to be the district court's implicit determination that the defendant was not a minor participant. United States v. Hatley, 15 F.3d 856, 860 (9th Cir.1994).
 
 
 21
 A defendant is entitled to a two level reduction as a minor participant under U.S.S.G. Sec. 3B1.2(b) if he is "less culpable than most other participants, but [his] role could not be described as minimal." U.S.S.G. Sec. 3B1.2, comment. (n.3). "However, an adjustment is warranted only where the defendant plays a role in the offense which makes him 'substantially less culpable than the average participant.' " United States v. Benitez, No. 93-50306, slip op. at 10858 (9th Cir. Sep. 9, 1994) (citing U.S.S.G. Sec. 3B1.2, comment. (backg'd.)).
 
 
 22
 Baltazar contends that he merely drove the van that transported the victim and that he is therefore less culpable than the majority of the participants involved in the offense. Yet even if a defendant is less culpable than the other participants, he is not necessarily entitled to a reduction for being a minor participant. United States v. Andrus, 925 F.2d 335, 338 (9th Cir.), cert. denied, 112 S.Ct. 249 (1991). "Rather, to merit a reduction the defendant should be 'substantially' less culpable than his co-participants. Benitez, slip op. at 10859 (citations omitted).
 
 
 23
 The district court's judgment and sentence are AFFIRMED.
 
 
 
 *
 The Honorable John W. Sedwick, United States District Judge for the District of Alaska, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3